IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WELLS FARGO BANK, N.A.,            :     CIVIL ACTION
                                   :     NO. 17-1863
          Plaintiff,              :
                                   :
     v.                            :
                                   :
CHUN CHIN YUNG, et al.,            :
                                   :
          Defendants.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        June 11, 2018


        This is a breach of contract action brought by

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), the trustee

for the holders of a commercial mortgage loan, against

Defendants Chun Chin Yung ("Yung") and Chao Hong Weng ("Weng,"

and together with Yung, "Defendants"), the borrowers.  Wells

Fargo alleges that Defendants breached their obligation to pay

the loan and are now in default under the terms of the

agreement.  Following the close of discovery, Wells Fargo filed

a motion for summary judgment, which Defendants oppose.

        For the reasons that follow, the Court will grant in

part and deny in part Wells Fargo's motion for summary judgment.

The Court will grant Wells Fargo's motion with respect to

liability, and award damages consisting of the principal,

interest, and certain fees, charges, and costs.  However, the
Court will deny Wells Fargo's motion to the extent it seeks
additional damages, including four disputed fees.

## I.     FACTUAL BACKGROUND[1]

On June 30, 2006, Yung and Weng obtained a commercial
mortgage loan from Column Financial, Inc. ("the Original
Lender"), with a principal amount of $2,725,000.00 ("the Loan")
and a fixed interest rate of 6.73% per annum.  <u>See</u> Promissory
Note at 1, Compl. Ex. A, ECF No. 1-1.  The Loan was secured by a
mortgage on a property located at 700-742 Adams Avenue,
Philadelphia, Pennsylvania ("the Mortgage").  <u>See</u> Open-End
Mortgage, Security Agreement, and Assignment of Leases and
Rents, Compl. Ex. B, ECF No. 1-2.

The promissory note for the loan ("the Note") provided
that Defendants were responsible for making monthly payments of
$17,638.09 for a ten-year period from August 11, 2006 until July
11, 2016 ("the Maturity Date").  <u>See</u> Note § 1.01.  The Note
further stated that, on the Maturity Date, the outstanding
principal balance, along with the accrued but unpaid interest,
would be due and payable in full.  <u>See</u> <u>id.</u>  Although the loan
had a ten-year term, the monthly payment amounts were calculated

---

[1]      The facts are presented in the light most favorable to
Defendants, the nonmoving party.

based upon a thirty-year term. Therefore, under the terms of
the Note, a very large payment would be due on the Maturity
Date.

Under the Note, a default occurs when, among other
things, Defendants fail to make a monthly payment on or before
the monthly payment due date, or fail to pay the outstanding
amount due on the Maturity Date. See Note § 1.04; see also
Mortgage § 2.1. The failure to pay on time also results in a
late charge of five percent (5.0%) of the overdue payment
amount, an additional four percent (4.0%) interest on the
outstanding principal balance, and costs of collection, such as
attorney's fees. See Note § 1.04.

On the closing date, Defendants signed the Note, the
Mortgage, and various other documents related to the Loan ("the
Loan Documents"). The Note contains an integration clause,
which states that "[t]his Note and the other Loan Documents
contain the entire agreements between the parties hereto
relating to the subject matter hereof and thereof and all prior
agreements relative hereto and thereto which are not contained
herein or therein are terminated." See Note § 2.08.

At his deposition, Yung testified that he personally
signed the Note, and no one else explained or reviewed the loan
documents on his behalf. See Tr. of Dep. of Chun Chin Yung
("Yung Dep."), 38:10-14, 39:3-5, Oct. 25, 2017, Pl.'s Mot. Summ.

J. Ex. C, ECF No. 20-4. Yung also stated that there was nothing in particular that he did not understand at the time of signing. See id. at 39:6-13.

Regarding default, Yung testified that he construed the terms of the Note as an obligation to pay the monthly bill on time, and that his understanding was that a default would only occur if he made late payments on the monthly bill. See id. at 49:7-24. He also testified that he did not understand the consequences of not paying the remainder of the loan on the Maturity Date. Id. at 50:16-20.

Yung testified that he understood that he had signed a ten-year fixed loan. See id. at 44:2-4. However, he also testified that someone, who he believes is a realtor, told him that it could later change to a thirty-year term. Id. at 44:24-45:6. Yung admits that he signed the Note without any modifications to the language for the original ten-year term. Id. at 47:1-3. However, according to Yung, he assumed that if he had been paying on time, the bank would refinance the loan to a thirty-year term at the Maturity Date. Id. at 53:11-20. Yung also testified that he did not ask to negotiate the terms of the Note because he believed that the terms were fixed for every client. Id. at 62:1-4. He did not share his assumption regarding the potential change to a thirty-year term before he signed the Loan Documents. Id. at 53:21-24.

4

In her deposition, Weng also confirmed that she personally signed the Note. See Tr. of Dep. of Chao Hong Weng ("Weng Dep.") at 7:22-24, Oct. 25, 2017, Pl.'s Mot. Summ. J. Ex. D, ECF No. 20-4. In addition, Weng also stated that she understood why she was signing the Note and that she and Yung were the borrowers. See id. at 9:5-16.

Following the execution of the loan documents, the Original Lender sold the loan to Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse") to be securitized into a commercial mortgage-backed security: Credit Suisse First Boston Mortgage Securities Corporation Commercial Mortgage Pass-Through Certificates, Series 2006-C5 ("CSFB 2006-C5"). See Pl.'s Mot. Summ. J. Ex. F, ECF No. 20-4 ("Note Allonge"); see also Tr. of Dep. of Aaron Guillotte ("Guillotte Dep.") 22:5-7; 22:19-22, Oct. 27, 2017, Pl.'s Mot. Summ. J. Ex. G, ECF No. 20-4. Wells Fargo is the trustee for the holders of CSFB 2006-C5 certificates. See id. 23:1.

According to Yung, approximately six months prior to the Maturity Date, he requested a modification extending the ten-year term to thirty years. See Yung Dep. at 69:14-22. However, Wells Fargo did not agree to the modification. See id. at 75:11-17.

On July 11, 2016, the Maturity Date for the Note, Yung failed to pay the remaining outstanding loan balance. See id.

5

at 77:2-5.  Wells Fargo did not accept Yung's offer to continue making regular payments after the Maturity Date, and as a result, Defendants have not made any payments since that date. Id. at 77:6-15.


## II.  PROCEDURAL HISTORY

Wells Fargo filed this action on April 24, 2017, bringing one breach of contract claim against Defendants.  See Compl., ECF No. 1.  Wells Fargo alleges that Defendants breached and defaulted on their contractual obligations under the Note by failing to pay in full the outstanding principal balance of the Note on the Maturity Date.  See id. ¶ 28.  Wells Fargo asks that judgment be entered in its favor and against Defendants in the amount of $2,757,390.68, together with additional and accruing interest, fees, charges, and costs recoverable under the Loan Documents.  See id. at 7.

On October 31, 2017, following the close of discovery, Wells Fargo filed a motion for summary judgment.  ECF No. 20. Defendants filed a response in opposition to the motion on November 14, 2017.  ECF No. 21.  The motion is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is awarded under Federal Rule of Civil Procedure 56 when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the Court views all facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting

this obligation shifts the burden to the non-moving party, who must "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV. DISCUSSION

Wells Fargo argues that it is entitled to summary judgment because Defendants admitted to having negotiated and signed the Note, and admit to failing to pay the outstanding principal and interest on the Maturity Date. See Pl.'s Br. at 9, ECF No. 20-2. In response, Defendants argue that genuine issues of material fact exist regarding (1) whether a valid, enforceable contract was created by the parties; (2) whether Wells Fargo has behaved in a reasonable manner and/or exercised its discretion in a reasonable manner; and (3) the amount of the alleged indebtedness. See Defs.' Mem. Law, ECF No. 21-2.

For the reasons set forth below, Wells Fargo has met its initial burden to show the absence of a genuine issue of material fact regarding liability and the majority of its claimed damages, and Defendants have failed to identify any facts showing that there is a genuine issue for trial with respect to those issues. Wells Fargo has also shown that under the applicable substantive law it is entitled to judgment as a matter of law as to liability and the majority of its claimed

damages.  However, there is a genuine issue of material fact
with respect to the remainder of the damages.

A.   Wells Fargo's Initial Burden to Show the Absence of a
     Genuine Issue of Material Fact

The Court must first determine whether Wells Fargo has
met its initial burden to show the absence of a genuine issue of
material fact.  See Anderson, 477 U.S. at 250.

Summary judgment is appropriate on a lender's breach
of contract claim against a debtor when the debtor admits that a
promissory note existed and is in default.  See U.S. Bank, Nat'l
Ass'n v. Zimmer, 649 F. App'x 250, 252-53 (3d. Cir. 2016)
(quoting Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa.
Super. Ct. 1998)).  In an action regarding a note secured by a
mortgage, the lender "presents a prima facie case by showing
'the execution and delivery of the [note] and its nonpayment.'"
CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1056 (Pa.
Super. Ct. 1999) (quoting Phila. Workingmen's Sav. Loan & Bldg.
Ass'n v. Wurzel, 49 A.2d 55, 57 (Pa. 1946)).  If the borrower
does not dispute failing to make payments under the terms of the
note, then the material facts are not in dispute.  See id.

Wells Fargo refers to § 1.01 of the Note, which
requires Defendants to pay the entire outstanding principal
balance, together with all accrued but unpaid interest thereon,

at the Maturity Date.  See Pl.'s Br. at 9 (citing Note § 1.01).

Based on the explicit language of the Note and Defendants'

admission that they failed to pay the outstanding balance at the

Maturity Date, Wells Fargo argues there is no genuine issue of

material fact regarding whether Defendants defaulted on the Note

and owe damages.  As a result, Wells Fargo claims, it is

entitled to summary judgment.  See id.

In Pennsylvania, "[a] contract is ambiguous if it is

reasonably susceptible of different constructions and capable of

being understood in more than one sense."  Allegheny Int'l, Inc.

v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir.

1994) (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385,

390 (Pa. 1986)).  The Supreme Court of Pennsylvania recognizes

two types of ambiguity: (1) patent ambiguity, which occurs when

"defective, obscure, or insensible" language causes the contract

to be unclear on its face and (2) latent ambiguity, which is

clear and unambiguous on its face but extraneous facts make the

meaning of the language ambiguous.  Id.

Here, there is no patent or latent ambiguity in the

language of the Note regarding default.  The Note clearly states

on its face that "any sum payable under this Note [] not paid on

or before the date such payment is due" results in a default,

which would include the failure to make payment on the Maturity

Date.  See Note § 1.04.  There are also no relevant extraneous

facts that render the language ambiguous because the contract contained an integration clause.  See id. § 2.08.

Defendants admit that they signed the Note and understood its terms, and they do not dispute their failure to pay the full balance due on the Maturity Date.  See Yung Dep. 39:6-13, 77:2-5; see also Weng Dep. 9:5-16.  Defendants' failure to pay the full amount due on the Maturity Date constitutes a default under the unambiguous terms of the Note.  See Note §§ 1.01, 1.04.

As Wells Fargo has established the existence and execution of the Note and that Defendants defaulted, Wells Fargo has met its initial burden to demonstrate the absence of a genuine issue of material fact with respect to its breach of contract claim.

B.    Defendants' Response

In response, Defendants argue that (1) there was not a valid, enforceable contract because there was no meeting of the minds; (2) Wells Fargo has not behaved in a reasonable manner or exercised its discretion in a reasonable manner; and (3) Wells Fargo has not established the amount of the alleged indebtedness.

1.   <u>The Validity and Enforceability of the Note</u>

Defendants first argue that the Note is not valid or enforceable because (1) Yung had an understanding of the terms of the agreement that differed from the written language; and (2) the Original Lender failed to ascertain Defendants' understanding of the contractual language even though Defendants lacked full command of the English language and had limited business experience.  <u>See</u> Defs.' Mem. Law at 9.  As a result, according to Defendants, there was no meeting of the minds and therefore no valid contract.  <u>See id.</u>

a.   <u>Yung's understanding of the ten-year term</u>

Under Pennsylvania law, objective language memorialized in writing by the parties creates a valid and enforceable contract.  <u>See</u> <u>Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.</u>, 619 F.2d 1001, 1009 (3d Cir. 1980) (citing <u>Nat'l Cash Register Co. v. Modern Transfer Co., Inc.</u>, 302 A.2d 486, 488 (Pa. Super. Ct. 1973)).  "Absent illegality, unconscionableness, fraud, duress, or mistake[,] the parties are bound by the terms of their contract."  <u>Id.</u>

The primary goal of contract interpretation is to determine the intent of the parties.  <u>See id.</u>  Courts determine the intent of the parties by looking at external, objective indications of the parties' intent –– such as the language

memorialized in the contract –- and not any extraneous subjective meanings that may be attached by a party. See id. Thus, a valid and enforceable contract does not depend "on the agreement of two minds . . . but on the agreement of two sets of external signs." Id. (quoting Oliver Wendell Holmes, The Path of Law, 10 Harv. L.Rev. 457, 463 (1897)).

The language within a written contract is "the strongest external sign of agreement between contracting parties." Id. Indeed, it is "firmly settled" under Pennsylvania law that "the intent of the parties to a written contract is contained in the writing itself." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001) (quoting Krizonvensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)). When the parties' intent is clear from the four corners of a clear and unequivocal written contract, a court will determine the meaning of the contract "by its contents alone." Id. (quoting Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982)). In other words, "[w]here the language is clear and unambiguous, the focus of the interpretation is upon the terms of the agreement as manifestly expressed, rather than, as, perhaps, silently intended." Id. at 92-93 (emphasis original) (quoting Steuart, 444 A.2d at 661).

Here, although the language of the Note clearly states that it was a ten-year term, Defendants argue that there was not

13

a meeting of the minds regarding the loan term because Yung believed that the Loan could continue beyond the ten years or be refinanced into a thirty-year term later. See Defs.' Mem. Law at 8.

Yung's subjective beliefs that he could choose not to make the balloon payment on the Maturity Date and that the loan would be modified into a thirty-year term are irrelevant, because the clear and unambiguous language of the Note -- which reflects the intent of the parties -- includes a ten-year term with a balloon payment at maturity. See Bohler-Uddeholm, 247 F.3d at 92-93. As a result, a valid and enforceable contract existed, and Defendants are bound by the language of the Note, including the ten-year term.

### b. Defendants' alleged lack of understanding of the terms of the agreement

Defendants also argue that a valid contract was not formed because the lenders failed to ascertain Defendants' understanding of the contractual language even though Defendants lacked full command of the English language and had limited business experience. Defs.' Mem. Law at 8-9. Defendants assert that there is a genuine issue of material fact for trial because Wells Fargo has failed to offer any evidence that the Original Lender "did any due diligence in the this transaction,"

including ensuring that Defendants understood the terms of the Loan.[2] Id. at 9. According to Defendants, "[l]ike so many unwitting borrowers at closing, Mr. Yung merely signed the many documents that were presented to him." Id. at 9 n.1.

Under Pennsylvania law, a party who signs a contract is responsible for reading the contract. See Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169, 1174-75 (E.D. Pa. 1990) (citing Bessen Bros., Inc. v. Brooks, 107 A.3d 623 (Pa. Super. Ct. 1954)). In the absence of fraud, ignorance of the contract's contents does not excuse the signing party from performing the obligations of the contract. See id. at 1175.

Here, contrary to Defendants' assertions in their papers, at their depositions, Defendants each admitted that they understood the terms of the contract. See Yung Dep. 39:6-8; see also Weng Dep. 9:5-16. However, even if they did not understand the contract's content, their lack of understanding would not void the contract. See Schillachi, 751 F. Supp. at 1174. Under Pennsylvania law, Defendants alone were responsible for understanding and reading the contract prior to signing it. See id. As this responsibility belonged to Defendants and not the

---

[2] Defendants also note that the loan was executed during the "height of the real estate bubble," and that the Original Lender had "no incentive" to perform even minimal due diligence because it knew the loan would be transferred to another entity for securitization. Id.

lender, the Original Lender was not obligated to ensure Defendants understood the terms of the loan. Accordingly, the Court rejects Defendants' argument that there was a genuine dispute of material fact as to whether the Note was valid and enforceable because the Original Lender failed to confirm that Defendants understood its terms.

### 2. Implied Duty of Good Faith and Fair Dealing

Defendants next argue that Wells Fargo did not act in good faith because it repeatedly rejected Defendants' request to modify the Note by extending its ten-year term to thirty years. Defs.' Mem. Law at 11. Defendants cite Bedrock Stone & Stuff, Inc. v. Mfrs. & Traders Trust Co., No. 04-2101, 2005 WL 1279148 (May 25, 2005), in which the court noted that the covenant of good faith "may be breached when a party unreasonably exercises discretion authorized in a contract." Id. at *8 (denying lender's motion for summary judgment in an action brought by a borrower for breach of the implied duty of good faith and fair dealing on the basis that there were disputed issues of material fact regarding, inter alia, "the facts surrounding an agreement to refinance the existing debt"). According to Defendants, Wells Fargo breached the duty of good faith by "unreasonably" refusing Yung's request to modify the loan. See Def.'s Mem. at 12-13.

In Pennsylvania, any party to a contract is required to exercise a duty of good faith and fair dealing in performing and enforcing the contract.  See Donahue v. Fed. Exp. Corp., 753 A.2d 238, 242 (Pa. Super. Ct. 2000).  However, there are limitations to this duty.  In particular, the implied duty of good faith and fair dealing "does not impose obligations on parties that contradict those included in the contract," nor can it compel a lender "to surrender rights which it has been given by statute or by the terms of its contract."  Tanenbaum v. Chase Home Fin. LLC, No. 13-4132, 2014 WL 4063358 at *7 (E.D. Pa. Aug. 18, 2014) (quoting Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989)).  In other words, "[i]mplied duties cannot trump express provisions in contract."  Stamerro v. Stamerro, 889 A.2d 1251, 1259 (Pa. Super. Ct. 2005) (quoting John B. Conomos, Inc. v. Sun Co., Inc. (R & M), 831 A.2d 696, 706 (Pa. Super. Ct. 2003)).

Although the court in Bedrock Stone found that there was a disputed issue of material fact regarding a breach of the convent of good faith in connection with a lender's refusal to extend additional financing and refinance a loan, the facts of that case are distinguishable.  There, the lender sent a letter to the borrower stating that it would extend additional financing if the borrower met certain conditions, which the borrower alleges were met.  See Bedrock Stone, 2005 WL 1279148,

at *3-5.  In addition, the lender allegedly made multiple
specific verbal representations to the borrower regarding
providing additional financing and refinancing the outstanding
loans, and then retracted those verbal commitments before they
were reduced to a writing.  See id. at *4-5.  The potential
breach of the duty of good faith was not the lender's ultimate
refusal to refinance the loan -- as the lender was not required
to agree to do so -- but instead the lender's other conduct
during the negotiations regarding refinancing.

Here, the Note included a ten-year term, and there is
no allegation that any representative of the Original Lender,
Wells Fargo, or the servicer made any representations to
Defendants regarding modifying the loan term.  Instead,
Defendants contend only that Wells Fargo unreasonably denied the
modification.  As the implied duty of good faith and fair
dealing did not impose any obligations on Wells Fargo beyond the
written contractual language, Wells Fargo was not required to
accept Defendants' request to modify the original ten-year term
of the Loan.  See Tanenbaum, 2014 WL 4063358 at *7.  Therefore,
Wells Fargo did not violate the implied duty of good faith and
fair dealing by rejecting Defendants' request for a
modification.

### 3.   The Amount of the Debt

Finally, Defendants argue that a genuine issue of material fact exists as to the alleged amount owed.  <u>See</u> Defs.' Mem. Law at 13-14.  In particular, Defendants challenge certain fees that Wells Fargo claims are owed.  <u>See</u> <u>id.</u>

Wells Fargo asserts that the total amount due as of September 29, 2017 was $2,526,275.09.  <u>See</u> Pl.'s Mem. Law at 7. This total consists of the principal balance, note rate interest, default interest, late fees, prior default interest, and other operational fees, such as processing fees, appraisal fees, and legal fees.  <u>Id.</u>  Wells Fargo bases this number on a computerized statement iteming the amounts due that they received from the loan servicer, LNR Partners, LLC ("LNR"), which is dated September 29, 2017 ("the Payoff Statement").  <u>See</u> <u>id.</u> at 6-7; <u>see also</u> Payoff Statement, Pl.'s Mot. Ex. H, ECF No. 20-4.  At his deposition, Aaron Guillotte, a representative of LNR, confirmed that the Payoff Statement was the last one that LNR issued.  <u>See</u> Guillotte Dep. at 40:22-23.  In their motion for summary judgment, Wells Fargo requests that the Court enter judgment in their favor in the amount of $2,526,275.09, together with any additional interest accruing at the default rate and recoverable fees and expenses from September 30, 2017, the day after the Payoff Statement.  <u>See</u> Pl.'s Br. at 12.

Defendants argue that there is a genuine issue of material fact regarding the total amount of damages, because Wells Fargo has not identified any facts supporting four of the fees listed on the Payoff Statement: (1) a "Title Expense" of $14,882.49; (2) an "LNR Admin Fee" of $125.00; (3) an "NSF Fee" of $100.00; and (4) a "Satisfaction of Mortgage" fee of $480.00. Defs.' Mem. Law, ECF No. 21-2 at 14-15. In particular, Defendants point to Guillotte's admission that he did not know what any of these four items were, or whether they were authorized by the Note. See id. at 15 (citing Guillotte Dep. 47:7-48-1, 50:6-7).

In light of the admission of the servicer's representative that he was not aware of the source of the four fees Defendants identify, Wells Fargo is not entitled to judgment as a matter of law with respect to those four line items. However, given that Defendants do not challenge Wells Fargo's calculation of the principal, interest, or any other fees, Wells Fargo has met its burden to demonstrate the absence of a genuine issue of material fact with respect to those amounts, which total $2,510,687.60. See Payoff Statement at 1.

Summary judgment with respect to liability is appropriate when there is no dispute about a default on the loan despite a dispute on the exact amount owed. See Chemical Bank v. Bruestle, No. 95-0228, 1995 WL 459002 at *1 (E.D. Pa. July

20

31, 1995) (granting summary judgment in favor of the plaintiff lender with respect to liability where the defendant acknowledged that a default occurred but disputed the amount due). Here, although there is a disputed issue of material fact regarding some aspects of the damages calculation, there is no dispute that Defendants defaulted on the loan, or that Wells Fargo correctly calculated the principal, interest, and the remainder of the fees. Therefore, the Court will grant Wells Fargo's motion for summary judgment with respect to liability, grant the motion in part and deny it in part with respect to damages, and award Wells Fargo damages based upon the undisputed amounts. Defendants are entitled to a jury trial regarding the four remaining disputed fees.

## V.    CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Wells Fargo's motion for summary judgment. The Court will grant the motion for summary judgment with respect to liability, and with respect to damages in the amount of $2,510,687.60, consisting of the principal, interest, and certain additional fees, plus pre-judgment interest accruing at the Default Interest Rate from September 30, 2017. However, the Court will deny the motion with respect to additional costs and fees.

An appropriate order follows.